[Civ. No. 8636.   First Appellate District, Division One.—October 18, 1932.]

In the Matter of the Estate of GEORGE McCARTHY, Deceased.   GERTRUDE A. McCARTHY, Appellant, v. NORBERT F. DOYLE, as Executor, etc., et al., Respondents.

Lewis F. Byington and William Penn Humphreys for Appellant.

Heller, Ehrman, White & McAuliffe, Joseph D. Toohig, Lloyd W. Dinkelspiel, Wm. A. Malone, Wm. J. Brennan and John J. Jury for Respondents.

THE COURT.—An appeal by Gertrude A. McCarthy, the widow of George McCarthy, deceased, from a decree of partial distribution to Frank McCarthy.

The will of decedent, which was holographic, contained the following provision: "I . . . leave and bequeath to my wife one-third of the business known as John McCarthy & Son, owned by me solely; one-third of the business known as John McCarthy & Son and owned by me to John Fox, my foreman, and one-third of the business known as John McCarthy & Son and owned by me to my nephew Frank McCarthy (son of my brother Frank McCarthy); balance of my estate to my wife Gertrude Agusta McCarthy,—she to dispose of same as she sees fit."

The evidence shows that the business—that of draying and forwarding—was established by decedent's father and that decedent purchased the same in 1907. According to the inventory and appraisement, which was filed on June 23, 1931, the following property was part of the business, namely, money on deposit in the Bank of California in the name of John McCarthy & Son; certain trucks and trailers, a tractor and other vehicles, with certain office equipment, and three lots on the corner of Thirteenth and Howard Streets in San Francisco, on which lots was situated a garage. The property was appraised at a total of $57,170.43. The remainder of the estate was appraised for the sum of $35,506.67, its total value being $92,677.10.

A petition was filed by said Frank McCarthy for the distribution to him of one-third of the property which, according to the inventory, was comprised in said business. He subsequently amended the petition to include certain accounts receivable and money outstanding which were not included in the inventory. Appellant opposed the petition, but the court found that decedent was the sole owner of the business, and that the expression "business known as John McCarthy & Son and owned by me solely" as used in the will referred to all the property used by him in the business, including the property set forth in the petition, together with goodwill, all of which the court found was decedent's separate property. A decree was entered accordingly.

Appellant relies upon two assignments of error, namely, that the court erred in finding that the real property at Thirteenth and Howard Streets and the garage building thereon constituted part of the property embraced in the expression "business known as John McCarthy & Son and owned by me solely", and that appellant had no community interest in any of the property comprised in the business.

Appellant married decedent in August, 1915, and was his wife at the time of his death on June 10, 1930. As stated, the business of John McCarthy & Son was purchased by decedent in 1907, and in 1908 he bought one of the lots in question which fronted on Thirteenth Street. In the years 1919 and 1924 the other two lots, which fronted on Howard Street and adjoined the first lot, were acquired by him. The lot first mentioned was purchased with money borrowed from the mother of decedent's first wife, who forgave the debt in her will; and the last two together with the garage building erected thereon were paid for with funds taken from the business. The parties stipulated that the vehicles enumerated in the decree were purchased after the marriage between appellant and decedent.

The first question presented is whether the real property upon which the business was conducted was also covered by the above expression. Appellant and another witness testified to a certain conversation with decedent from which inferences might be drawn in support of her contention that it was not; and while this testimony was uncontradicted the credibility of the witnesses was a question for the trial court. (Code Civ. Proc., sec. 1847.) The same rule applies notwith-

standing a want of contradiction (*Staples* v. *Hawthorne*, 208 Cal. 578 [283 Pac. 67]), as the court in determining the credibility of the witnesses may take into consideration their motives and interest in the result of the case (27 Cal. Jur., Witnesses, sec. 154, p. 180.) ▮ It was shown that the garage on the property was used for storage of the vehicles and other equipment used in the business, and it was testified that the "drivers operated from there". Upon the building was painted the name of the concern, and the structure was used exclusively for the above purposes. The taxes on the property were paid by checks drawn on the deposit in the Bank of California which, as stated, was in the name of John McCarthy & Son. In this connection it was shown that decedent had deposits in other banks standing in his own name. Other facts appear from the testimony which, though of slight relevancy standing alone, together tend to support the finding that the lots were part of the business and were so considered by decedent.

The facts are similar to those in *Estate of Friedrichs*, 107 Cal. App. 142 [290 Pac. 54], where the business of decedent was bequeathed, and one of the questions was whether certain real property on which the same had been conducted by him was a part of the business within the meaning of his will. It was held to be a fair inference from all the circumstances that such was his intention, and a decree distributing the property in accordance therewith was affirmed.

Appellant seeks to distinguish this case upon the facts but no material differences between the cases has been shown.

Appellant also relies upon *Shaw* v. *Hollister Land & Imp. Co.*, 166 Cal. 257 [135 Pac. 965]. There the question was whether a sale of real property by defendant corporation constituted a violation of section 361a of the Civil Code as it then read, and which prohibited a sale by a corporation of its "business, franchise and property as a whole" without the consent of stockholders holding of record at least two-thirds of its issued capital stock. It was held that the sale in question did not necessarily prevent the corporation from continuing its business, and consequently was not a violation of the section. The court said that a sale of the property on which the business is conducted does not embrace or carry with it the business itself, nor a bequest of a business include the premises on which it is carried on.

The reference to a bequest of a business was, however, unnecessary to the decision, and we are satisfied that, as was the case in the *Estate of Friedrichs, supra,* the evidence supports the conclusion of the trial court that the word "business" as used by the testator referred to and was intended to include the real property upon which the garage was situated.

The question remains whether appellant has a community interest in the property. If she has, this interest is not subject to the testamentary disposition of her husband (Civ. Code, sec. 1401), and she may claim the same unless, as respondents contend, she has elected to take under the will and is thereby estopped.

The petition for partial distribution was not filed by appellant or on her behalf, and it does not appear that she has accepted any benefits under the will. It has been held that before a widow can be denied her right to elect upon distribution to take her half of the community property it must be found that, with knowledge of her rights, by unequivocal acts evidencing her intent, she has so dealt with the property left her by the will that it would be inequitable to permit her to avoid those acts and disclaim her intent. (*In re Smith,* 108 Cal. 115 [40 Pac. 1037].) A wife is not estopped by causing the will of her husband to be probated or by becoming the executrix thereof (*In re Gwin's Estate,* 77 Cal. 313 [19 Pac. 527]) ; nor does her declaration before distribution that she intends to assert her rights in the community property have that effect, as she has the right to ascertain what part of the estate is community property before being required to elect. (*Estate of Dunphy,* 147 Cal. 95 [81 Pac. 315].) Nor do we think the fact that the appellant in her written opposition to the petition was described as the "widow and residuary legatee" of decedent should conclude her. There is no provision in the will fixing a time when the election shall be made and, as was said in the case last cited, there is no provision of the laws of this state as to the time when a widow shall make her election. (*Estate of Dunphy, supra,* p. 104.) According to appellant's counsel, if her community interest proves to be of the value which they estimate, it will be to her advantage to claim such interest rather than the portion given her by the will. While it has been held that she must elect before

distribution (*Cunha* v. *Hughes*, 122 Cal. 111 [54 Pac. 535, 68 Am. St. Rep. 27]; *Estate of Vogt*, 154 Cal. 508 [98 Pac. 265]), nevertheless, in accordance with the above decisions, she has the right to be advised as to whether the property of the estate is separate or community before making her election.

Respondents cite *Palenske* v. *Palenske*, 281 Ill. 574 [118 N. E. 46], in support of their contention. There a widow answered a bill seeking a construction of her husband's will, and it was held that she thereby elected to ratify the will. But in the case at bar no benefits of the will have been sought nor accepted; no claims which are necessarily incon sistent have been made nor an intention to elect indicated. (*Estate of Smith, supra; Estate of Moore*, 62 Cal. App. 265 [216 Pac. 981].)

In support of her claim to a community interest appellant relies mainly on the presumption created by section 164 of the Civil Code.

It is the rule that where at the time of his marriage the husband has a definite amount of his separate property invested as capital in his business, which he continues to conduct, the entire profits therefrom are not necessarily his separate property but may be the result of his energy and ability. (*Estate of Gold*, 170 Cal. 621 [151 Pac. 12].) In determining what portion of such profits is community property, while it must be presumed in the absence of evidence that some thereof were due to the capital invested, and would equal at least the usual interest on a long term investment well secured, yet if the husband claims that his capital was entitled to a greater return than legal interest the burden of showing the fact rests upon him. (*Pereira* v. *Pereira*, 156 Cal. 1, 11 [103 Pac. 488, 134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880]; *Estate of Saswell*, 105 Cal. App. 475 [288 Pac. 102]; *Estate of Fellows*, 106 Cal. App. 681 [289 Pac. 887].)

The will was before the court, and respondents urge that decedent's declaration therein that the business was separate property is some evidence of the fact; but, as has been held, such declarations were not competent against appellant and must be disregarded (*Estate of Granniss*, 142 Cal. 1 [75 Pac. 324]; *Bias* v. *Reed*, 169 Cal. 33 [145 Pac. 516]; *Crowley* v. *Savings Union Bank etc. Co.*, 30 Cal. App.

144 [157 Pac. 516] ; *Potter* v. *Smith*, 48 Cal. App. 162 [191 Pac. 1023]). The same rule applies to similar statements in the inventory and appraisement (*Baum* v. *Reay*, 96 Cal. 462 [29 Pac. 117, 31 Pac. 561]; *Malville* v. *Kappeler*, 4 Cal. Unrep. 843 [37 Pac. 934]; *Estate of Regnart*, 102 Cal. App. 643 [283 Pac. 860]).

█ There were offered by respondents and admitted in evidence over objection an original and a supplemental complaint in an action for divorce filed against appellant by decedent in 1926. Appellant failed to answer the original complaint and her default was entered by the clerk of the court. Thereafter in 1929 a supplementary complaint was filed reciting the above facts, and that an interlocutory decree had been entered, but alleging that the parties became reconciled and that the decree was vacated. The latter pleading alleged acts of cruelty by appellant following such reconciliation, and prayed for a decree of divorce. A summons was issued, but it does not appear that the same was served upon appellant, and it is conceded that the parties continued to live together until decedent's death. Both complaints averred that there was no community property, but the record contains no evidence of the entry of an interlocutory decree, and the allegations of the supplemental complaint were merely self-serving declarations not admissible against appellant (10 Cal. Jur., Evidence, sec. 311, p. 1064). █ As to the original pleading, however, it has been held that where a judgment has been entered upon a default the essential allegations of the claim upon which the judgment was entered are admissible in another proceeding as evidence of an admission by silence (Wigmore on Evidence, secs. 1066, 1072; *Millard* v. *Adams*, 1 Misc. Rep. 431 [21 N. Y. Supp. 424]; *Bonazzi* v. *Fortney*, 94 Vt. 263 [110 Atl. 439]). As was said by Justice Peckham in *Eisenlord* v. *Clum*, 126 N. Y. 552 [27 N. E. 1024, 12 L. R. A. 836], with reference to the rule admitting such evidence, "It is not the judgment which is to form the evidence. It is the admission contained in the pleading or by the suffering of a default." And it would seem that here the complaint was in principle admissible although it has been held that such admissions have but slight probative value (22 Cor. Jur., Evidence, sec. 372, p. 331, and cases cited).

Respondents also offered copies of income tax returns said to have been filed by decedent and to contain declarations similar to those above, but these do not appear to have been admitted in evidence.

It is not contended that appellant invested in the business; but, according to her testimony, she was employed by an insurance company for about four years after her marriage, and she also worked in her husband's office for a time. While presumably she received something for her services, and her earnings, if any, were community property (*Estate of Pepper*, 158 Cal. 619 [112 Pac. 62, 31 L. R. A. (N. S.) 1092), there is no evidence of the amount nor of its disposition. It was testified that the business of the concern was profitable, but that decedent took no active part. therein after 1925, contenting himself with visiting the office daily, its management being entrusted to his foreman. In 1924 he was absent from the state for about two months; during portions of the years 1925 and 1926 he was in Europe, and in 1927 spent from two to three months in Alaska. He also visited South America in 1928, where he remained for about five months. No effort appears to have been made to show the value of decedent's estate at the time of the marriage, nor the annual profits from the business. With the exception of the above testimony to the effect that the business was profitable the record is silent on this question. It appears that the books were available, and no reason is shown for respondents' failure to disclose these facts. Under the cases cited the burden rested upon them to show the amount of the investment and that decedent was entitled to a return of more than legal interest thereon; and while, as stated, there is evidence that decedent did not actively participate in the management after 1925, this was insufficient to show that the increased value of the business between his marriage and death—which increase appears to have been considerable—was not to some extent due to his efforts and ability. It was respondents' duty to clarify the history of the property and to show by a preponderance of the evidence what part of the same was separate property (*Estate of Fellows, supra*). This in our opinion they failed to do; nor was the implied admission by appellant in the divorce action sufficient to support a finding that there was no community property at the time of her husband's death.

In view of the foregoing we are satisfied that the real property mentioned was part of the business within the meaning of the will, but that the evidence is insufficient to support the finding that appellant had no community interest in any of the property sought to be distributed; further, that here has been no election by her to take under the will, and until her community interest, if any, is ascertained she will not be required to elect—this, of course, being subject to the general rule that her election must be made before distribution (*Cunha* v. *Hughes, supra; Estate of Smith, supra; Estate of Dunphy, supra; Estate of Vogt, supra*). This question should be determined in the present proceeding with respect to all the property of the estate in order that appellant may act with full knowledge of her rights.

The decree is accordingly reversed and the cause remanded for a determination of the question as to what portion of the property of the estate, if any, is community property.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 17, 1932.